UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MARTIN NAHOUN,

Plaintiff,

-against-

04 Civ. 9221 (LAK)

EMPLOYEES' PENSION PLAN OF CREDIT SUISSE FIRST BOSTON and CREDIT SUISSE FIRST BOSTON CORPORATION EMPLOYEE BENEFITS COMMITTEE,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

Appearances:

Cem Ozer
SCHOEMAN, UPDIKE & KAUFMAN, LLP
*Attorney for Plaintiff*

Nicholas H. De Baun
Allison E. Maue
SIDLEY AUSTIN BROWN & WOOD LLP
*Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge.*

Plaintiff contends he wrongly was denied benefits due under his company's ERISA plan. Defendants move to dismiss on the ground that plaintiff was not a plan "participant."

I

According to the complaint, Martin Nahoun was employed by Credit Suisse First Boston ("CSFB") from April 1982 until April 1995 as a vice president in the equities department. In January 1997, Nahoun returned to CSFB to become a vice president/project manager in the equities and fixed income divisions. The complaint further alleges that

> "[a]lthough Nahoun was given the title 'independent contractor' on or about December 15, 1997, he was never treated like one. Moreover, in 1999, CSFB effectively removed the 'independent contractor' designation by: (a) exempting Nahoun from policies then promulgated that were applicable to independent contractors but not employees, including a requirement that independent contractors submit periodic statements of work performed to obtain future work from CSFB; and (b) requiring Nahoun to attend meetings for employees relating to certain regulatory compliance matters that independent contractors did not attend."[1]

Though Nahoun was paid on a Form 1099 rather than a W-2, "he was paid a set salary (which he was asked to break down into hourly increments for submission to CSFB)."[2] Furthermore, according to Nahoun, "the vast majority of CSFB's records" treated him as an employee rather than a private contractor.[3]

CSFB terminated Nahoun's employment on March 30, 2004. In the middle of April, Nahoun wrote to the Credit Suisse First Boston Corporation Employee Benefits Committee (the "Committee") seeking confirmation that the Employees' Pension Plan of Credit Suisse First Boston (the "Plan") covered his employment with CSFB from December 16, 1997 through March 30, 2004

---

1 Cpt. ¶ 2.

2 *Id.* ¶ 12.

3 *See id.* ¶ 14.

(the "Relevant Period"). Subsequently, CSFB informed Nahoun that the Plan did not cover Nahoun during the Relevant Period and purported to deny his appeal from that decision. Neither the Plan nor the Committee responded to Nahoun's request.[4]

Nahoun subsequently brought two claims against the Plan and the Committee under the Employee Retirement Income Security Act of 1974, as amended ("ERISA").[5] First, he requests the Court to determine *de novo* that he is entitled to benefits for his work during the Relevant Period under Section 502(a)(1)(B) of ERISA.[6] Second, he alleges that the Plan and Committee violated Section 503[7] by failing to review his claim.

II.

In deciding a Rule 12(b)(6) motion, the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor.[8] Where, as here, the complaint refers to a document that is integral to it, the Court considers that document as well.[9]

---

4 *Id.* ¶ 3.

5 29 U.S.C. § 1001 et seq.

6 29 U.S.C. § 1132(a)(1)(B).

7 29 U.S.C. § 1133.

8 *See e.g.*, *Starr v. Georgeson S'holder, Inc.*, ___ F.3d ___, 2005 WL 1400139 at *4 (2d Cir. 2005); *Flores v. South Peru Copper Corp.*, 343 F.3d 140, 143 (2d Cir. 2003).

9 *See e.g., San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808-809 (2d Cir. 1996).

Dismissal is inappropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[10]

To state claims under ERISA, Nahoun must allege that he was a "participant" within the meaning of the statute.[11] ERISA defines "participant" in relevant part to "mean[] any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization."[12] Defendants urge that this implies that an individual, to be a "participant," must be both (1) a common law employee and (2) actually eligible to receive a benefit from the ERISA plan.[13] They allege that Nahoun concedes in his complaint that he is not eligible to receive a benefit under CSFB's plan and that his claims therefore fail.[14]

---

10 *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994) (*quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

11 Section 503 of ERISA does not create a private right of action. 29 U.S.C. § 1133. Rather, Nahoun must sue under Section 502(a)(3) as a "participant" to enforce the rights guaranteed under Section 503. 29 U.S.C. § 1132(a)(3).

12 ERISA § 3(7), 29 U.S.C. § 1002(7).

13 Def. Br. at 6. The Supreme Court explained that "former employees ... who have a 'colorable claim' to vested benefits" fall under the statutory definition of "participant." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989) (*quoting Kuntz v. Reese*, 789 F.2d 1410, 1411 (9th Cir. 1986) (per curiam) *cert. denied*, 479 U.S. 916 (1986)).

14 Section 503 of ERISA grants rights only to "participants" and "beneficiaries." 29 U.S.C. § 1133. Nahoun is clearly not a "beneficiary" within the meaning of ERISA. ERISA § 3(8), 29 U.S.C. § 1002(8).

III.

The complaint alleges that Nahoun is covered. Defendants provide the Court with two versions of the Plan on this motion, that in effect as of January 1, 1998 ("1998 Plan")[15] and an amendment and restatement effective January 1, 2004 ("2004 Plan").[16] Both define "participants" as "Employee[s] participating in the Plan."[17] The term "Employee" is defined in the 1998 Plan to

> "mean any person employed by the Corporation or a Participating Affiliate and treated as such on the books and records of the Corporation or Participating Affiliate, and shall not include (i) *any person treated by the Corporation or Participating Affiliate as an independent contractor* or (ii) any person serving the Corporation or Participating Affiliate through an agency, consulting firm, payroll service, sub-contractor or other third party provider."[18]

The 2004 definition is identical in all material respects.[19]

Defendants argue that Nahoun was not an "employee" within the meaning of the Plan because CSFB treated Nahoun on its books and records as an independent contractor rather than an employee. Accordingly, they argue Nahoun was not a "participant" within the meaning of ERISA.[20]

---

15 Aff. of Nicholas H. De Baun, Ex. C ("1998 Plan").

16 Aff. of Nicholas H. De Baun, Ex. B ("2004 Plan").

17 2004 Plan ¶ 8.2; 1998 Plan ¶ 8.2.

18 1998 Plan ¶ 1.14 (emphasis added).

19 2004 Plan ¶ 1.16.

20 Defendants point also to ¶ 3.2 of the 2004 Plan, which reads in relevant part "[t]he participation of a Participant who ceases to be an Employee *or who ceases to be on the U.S. payroll* of the Company or a Participating Affiliate shall terminate as of the date of such cessation." (Emphasis added). Because Nahoun concedes in the complaint that he was paid on a Form 1099 rather than a W-2, defendants argue that he concededly was not a "participant" within the meaning of the Plan. This argument fails. The analogous provision

Defendants' argument is unpersuasive. The term "books and records" is not defined in Article I of the Plan, and it is not clear that the definition of "employee" requires CSFB to treat an individual as an "employee" on *all* of its books and records for the individual to be covered. Nahoun, moreover, alleges that CSFB treated him as an employee on its books and records. His complaint points to several records specifically, including "records kept for compliance purposes."[21] Consequently, it cannot be said with certainty that Nahoun cannot prove at trial that he was treated as an employee in CSFB's books and records.

Nor is it certain that the Plan's exclusion of those "treated by the Corporation or Participating Affiliate as an independent contractor" applies.[22] Nahoun alleges that he was treated as an employee rather than an independent contractor[23] and enumerates more than a dozen reasons in support of this conclusion.[24]

In response, defendants contend essentially that the exclusion specifically targets

---

in the 1998 Plan does not mention "U.S. payroll," a term that in any case is not defined in the Plan. It is not entirely clear that being paid on a Form 1099 suffices to take Nahoun out of the Plan.

21 *See id.* ¶ 14 (Nahoun specifically points to "distribution lists for the groups within which he worked, certain records kept for compliance purposes, records relating to his own brokerage activities, and lists used to track and monitor independent contractors maintained by the human resources department of CSFB.").

22 1998 Plan ¶ 1.14.

23 Nahoun does concede that CSFB designated him an "independent contractor." But he asserts that he "was never treated like [an independent contractor]." Cpt. ¶ 2.

24 *See* Cpt. ¶ 12.

those treated as independent contractors on CSFB's books and records, such as Nahoun.[25] However, the Plan excludes those "treated" as independent contractors, not those "treated on the books and records" of CSFB as independent contractors.[26]

While it seems unlikely, the Court cannot now say that Nahoun could prove no facts that would permit a finding that he was a Plan "participant." Accordingly, this branch of defendants' motion lacks merit.

IV.

Defendants argue also that Nahoun's Section 502[27] claim is time-barred. They contend the suit was brought over six years after Nahoun had clear notice that he was not a Plan "participant" because, according to them, the Plan itself unambiguously notified Nahoun of his exclusion.[28]

---

25 Def. Br. at 8; *see also* Def. Reply at 3 ("[P]laintiff offers the Court nothing more than the irrelevant argument that he is entitled to benefits because he was allegedly a common law employee of CSFB at the time.").

26 *See* 1998 Plan ¶ 1.14; 2004 Plan ¶ 1.16. By using the word "treated" rather than "treated on its books and records," the Plan does not resolve the question of whether the "employee" and "independent contractor" categories are mutually exclusive (e.g., can someone be simultaneously treated as an employee on CSFB's books and records and treated as an independent contractor, or does CSFB treat individuals on its books and records either as an employee or as an independent contractor?).

27 29 U.S.C. § 1132.

28 Def. Br. at 11.

Defendants rely principally on *Downes v. J.P. Morgan Chase & Co.*[29] In *Downes*, plaintiff unsuccessfully brought an action for denied benefits under ERISA alleging she had been "wrongfully classified . . . as an independent contractor rather than as an employee" and that her employer denied her benefits "on that basis."[30] *Downes*, however, is inapposite. Unlike the plaintiff in *Downes*, Nahoun alleges that he always has been a Plan "participant," not that he had been wrongly classified. According to Nahoun, CSFB, the Plan, and the Committee incorrectly denied him benefits due under the plan after he left CSFB.[31]

---

29

*See e.g., Downes v. J.P. Morgan Chase & Co.*, No. 03 Civ. 8991, 2004 WL 1277991, at *5 ("All of the district courts that have considered claims made by individuals who were classified or treated as independent contractors have held that the statute of limitations begins to run when the beneficiary first learns that she is considered an independent contractor and is therefore not entitled to benefits, regardless of whether she later files a formal claim for benefits.") (*citing Brennan v. Metro. Life Ins. Co.*, 275 F. Supp.2d 406, 409-10 (S.D.N.Y. 2003)).

30

*Id.* at *1 ("Downes alleges that J.P. Morgan deliberately 'misclassif[ied] her as a consultant and/or independent contractor with the specific intent to deny her benefits.'").

31

The other cases defendants cite are similarly inapposite. In *Brennan v. Metropolitan Life Insurance Company*, plaintiffs signed express agreements providing that "[i]t is understood that supplier shall not be entitled to or be eligible to participate in any benefits or privileges given to [MetLife] employees including ... participation in Insurance and Retirement Programs." 275 F. Supp. 2d 406, 408 (S.D.N.Y. 2003). *Szoke v. Deloitte & Touche LLP* is completely irrelevant. No. 93 Civ. 7097, 1995 WL 92258 (S.D.N.Y. 1995). In that case, plaintiff was terminated for poor performance in 1983 and brought an action in 1993. *Id.* at *1.

In *Carey v. IBEW Local 363 Pension Plan*, the plan trustees sent plaintiff a letter in 1991 "unequivocally repudiat[ing] Carey's entitlement to benefits." 201 F.3d 44, 49 (2d Cir. 1999). In January 1997, the plan denied plaintiff's formal application for benefits and in March 1998 plaintiff brought an action under ERISA. *Id.* at 46. The Court held that the statute of limitations began to run in 1991 because "a cause of action under ERISA accrues upon a clear repudiation by the plan that is known, or should be known, to the plaintiff regardless of whether the plaintiff has filed a formal application for benefits." *Id.* at 49. Significantly, plaintiff had received a personalized letter from the plan secretary in March 1989 notifying him that he was not covered and pointing to the relevant provisions in the

Ultimately, defendants' statute of limitations argument is without merit. If Nahoun's employment during the Relevant Period was covered by the Plan, then the claim would not be time-barred. In that event, the denial would have occurred no earlier than 2004, when CSFB told Nahoun that the Plan did not cover him. If, on the other hand, Nahoun is not a "participant," he cannot recover in any event. The statute of limitations is therefore immaterial.

*Conclusion*

Defendants' motion to dismiss the complaint for failure to state a claim is denied.

SO ORDERED.

Dated: June 22, 2005

Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

plan. *Id.* at 45-46. If a personalized letter from the plan secretary pointing to relevant sections of the plan is insufficient to constitute "clear repudiation by the plan," then an ambiguous definition within the plan itself will not be sufficient either. Under the facts as alleged by Nahoun, the "cause of action . . . accrue[d]" when CSFB advised Nahoun he was not covered, after April 20, 2004. Cpt. ¶ 3.